BANK ONE, COLUMBUS, N.A., f.k.a. City National Bank & Trust Co., Appellee,

v.

PALMER, Appellant.

[Cite as *Bank One, Columbus, N.A. v. Palmer* (1989), 63 Ohio App.3d 491.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–991.

Decided July 25, 1989.

*James C. Lewis III* and *David W. Carpenter,* for appellee.

*Hyatt Legal Services, Amy L. Thoma* and *James S. Reece,* for appellant.

BOWMAN, Judge.

In 1972, appellant's husband, Richard Palmer, completed an application with appellee, Bank One, Columbus, N.A., f.k.a. City National Bank and Trust Co., for a Visa card. The first space on the application was for "full name" and it was filled in "Richard W. Palmer." There was no space on the application designated "co-applicant," nor was any information asked of a co-applicant. Only Richard Palmer provided personal information such as age, address, previous addresses, employer and past employer. Only Richard Palmer provided credit references. There were only two items on the application not relating to Richard Palmer, which were "spouse's employer" and "spouse's income." Richard Palmer answered "none" and "–0–." Bank Ohio issued two credit cards to Richard Palmer, both bearing only his name as the cardholder.

Appellant's name appears twice on the application. It was printed by Richard Palmer in the space allotted for "spouse's name," although nothing on the application indicates that the spouse is also a co-applicant. It also appears at the bottom of the application where appellant provided her signature. The following was printed above the signatures of appellant and her husband:

"PLEASE READ: I have read and agree to all the terms and conditions of the BankAmericard Agreement and Customer Payment Schedule wherein applicant is called holder, and to the Line O'Credit Agreement, if applicable. I affirm that the above statements are true and complete and request City National Bank to issue me a BankAmericard. This is done with the understanding that City National Bank will rely upon said statements in considering my application.

"I also authorize City National Bank to make whatever credit and/or investigative inquiries it deems necessary in connection with my credit application or in the course of review or collection of any credit extended."

On May 13, 1977, Richard Palmer advised Bank One by letter that from that time forward, he was to be the only authorized user of the credit card and that he would no longer be responsible for charges made by Beverly J. Palmer. The two have been divorced since 1979. Appellant never used the Visa account after the letter was written to Bank One by her ex-husband.

On August 26, 1987, Bank One commenced this action against appellant, Beverly Palmer, seeking to recover damages on the basis that the Visa charge card application which she signed created a contract between herself and the bank and that she was responsible for $2,938.56 in Visa charges made by Richard Palmer, her ex-husband. The case was submitted to the trial court

upon stipulated facts. The court granted judgment in favor of plaintiff-appellee, Bank One, and against defendant-appellant, Beverly J. Palmer.

Appellant has asserted the following assignments of error:

"1. The conclusion reached by the trial court is contrary to the law and the weight of the evidence.

"2. The court erred in not concluding that plaintiff-appellee's claim was barred by laches."

Credit card agreements are contracts whereby the issuance and use of a credit card creates a legally binding agreement. *Manufacturers & Traders Trust Co. v. Lindauer* (1987), 135 Misc.2d 132, 513 N.Y.S.2d 629. More specifically, a bank credit card, as in this case, is a three-party, three-part agreement between the bank, the consumer and the merchant. *Preston State Bank v. Jordan* (Tex.App.1985), 692 S.W.2d 740. The agreement between the consumer/cardholder and the issuing bank usually contains a detailed description of each party's rights, duties and liabilities. *Id.* Of course, as in any contract, a party is not bound contractually to provisions which are not contained in the bank card agreement. *Manufacturers & Traders Trust, supra.*

■ Appellant's first assignment of error raises two issues. The first issue is whether she is contractually liable for payment on a Visa credit card account, which was issued solely in the name of her ex-husband, Richard Palmer. Appellee argues that appellant's mere signing of the application makes her a co-applicant subject to joint liability on the account.

The only document in the record which purports to bind appellant contractually to appellee is the credit card application. Unlike *Bank One of Columbus v. Might* (June 15, 1982), Franklin App. No. 82AP–86, unreported, 1982 WL 4226, no separate credit card agreement is contained in the record. The application signed by appellant does not provide that it is a joint application. There is no request for information about a co-applicant or joint applicant on which to determine whether to extend credit, nor is there any indication that appellant signed the application as a joint applicant. Additionally, there is no express provision that one who signs the document incurs joint liability on the account. Finally, the mere fact that Beverly Palmer signed the application does not make her an applicant, jointly or individually, especially considering that the only information about her was given as "spouse" information.

■ Construing this contract strictly against appellee as the drafter, we conclude that it does not provide for joint liability. To hold otherwise, we would have to read terms into the contract which simply do not exist. Furthermore, even if appellant did request a bank card merely by signing the

application, one was never issued to her; therefore, no cardholder contract could have existed between her and the bank. At most, she might have had liability as the holder of a related card, but a person with that status is not liable for charges made by the cardholder, but only for charges made by the holder of a related card. See *Cleveland Trust Co. v. Snyder* (1978), 55 Ohio App.2d 168, 9 O.O.3d 329, 380 N.E.2d 354.

The second issue raised by appellant is that, even if she was a cardholder, she was released from liability when Richard Palmer notified the bank that appellant was no longer an authorized user. Richard Palmer's notification to the bank had no effect on appellant's legal obligation to the bank because she was never liable for payments on the card. Appellee conceded during oral argument that, although it had not responded to Richard Palmer's letter, it would not look to him for payment of any unauthorized charges made on the account by appellant after receiving his letter.

Even assuming appellant was jointly liable with her husband when the application was made, appellee could not change the terms of the contract without appellant's agreement and without valid consideration. That is, appellee could not agree solely with Richard Palmer that he (Palmer) would only be liable for charges made to the account by him, while continuing to hold appellant liable for charges made by Palmer, particularly since appellant was no longer permitted by either Palmer or appellee to use the account. Appellant's first assignment of error is well taken.

Appellant asserts in her second assignment of error that appellee's claims against her were barred by laches. The defense of laches is available where special circumstances exist and the defendant can demonstrate that he has been materially prejudiced by the delay of the person asserting his claim. See *Thirty–Four Corp. v. Sixty–Seven Corp.* (1984), 15 Ohio St.3d 350, 15 OBR 472, 474 N.E.2d 295. Appellant has not demonstrated sufficient special circumstances to justify the invoking of the doctrine of laches. Appellant's second assignment of error is not well taken.

Appellant's first assignment of error is sustained. Appellant's second assignment of error is overruled. The judgment of the trial court is reversed and this cause is remanded with instructions to enter judgment in favor of Beverly J. Palmer.

> *Judgment reversed and cause*
> *remanded with instructions.*

McCormac, P.J., and Young, J., concur.