**Christopher G. HRIVNAK, Plaintiff,**

v.

**NCO PORTFOLIO MANAGEMENT, et al., Defendants.**

**Case No. 1:10 CV 00646.**

United States District Court, N.D. Ohio, Eastern Division.

Signed Jan. 28, 2014.

Order Denying Motion to Amend May 29, 2014.

Anand N. Misra, Beachwood, OH, Robert S. Belovich, Parma, OH, for Plaintiff.

Allison L. Cannizaro, Brian D. Roth, David Israel, Sessions, Fishman, Nathan & Israel, Metairie, LA, Franklin C. Malemud, Reminger & Reminger, James W.Y. OH, Mark C. Brncik, Javitch, Block & Rathbone, Cleveland, OH, James K. Schultz, Sessions, Fishman, Nathan & Israel, Chicago, IL, Michael D. Slodov, Sessions Fishman Nathan & Israel, Chagrin Falls, OH, for Defendants.

## OPINION AND ORDER

DONALD C. NUGENT, District Judge.

Defendants Expert Global Solutions, Inc. f/k/a NCO Group, Inc. and NCO Financial Systems, Inc., successor in interest to NCOP Capital II, LLC d/b/a/ NCO Portfolio Management, and NCO Portfolio Management, Inc. (the "NCO Defendants"), and Defendant Javitch, Block & Rathbone, LLC ("JBR") filed separate motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) (ECF #s 76 and 80). The motions request dismissal of Plaintiff Christopher G. Hrivnak's complaint, which is premised entirely on the content of a state court complaint seeking to recover an unpaid credit card debt from Plaintiff.

Plaintiff has opposed the motions for judgment on the pleadings, and Defendants have replied. Thus, the motions are ripe for consideration.

For the reasons stated herein, Plaintiff's complaint fails to state a claim upon which relief may be granted. Accordingly, Defendants' motions for judgment on the pleadings are granted.

## I. FACTS

Although this matter has been in litigation for several years, the facts are very simple. On June 4, 2009, Defendant JBR filed a lawsuit against Plaintiff in the Bedford Municipal Court. The name "NCO Portfolio Management" appeared in the caption of the Bedford complaint. The complaint sought recovery from Plaintiff on an unpaid credit card debt and sought damages in the amount of $11,481.81. The complaint identified Mr. Hrivnak as the obligated party and provided the original creditor, the nature of the debt, the amount of the debt, the credit card account number, and explained why the monthly credit card statements were not attached to the complaint. The complaint also contained a copy of an unsigned written credit card agreement.

Following the dismissal of the collection action, the parties were realigned and Mr. Hrivnak became the plaintiff in the Bedford Municipal Court case. The case later was removed to this Court.[1]

Plaintiff claims that the filing of the collection action gives rise to certain claims against the NCO Defendants and JBR. Among other claims, Plaintiff alleges that "NCO Portfolio Management," the name appearing in the caption of the Bedford complaint, was a fiction, without authority to sue in Ohio or elsewhere. Yet Plaintiff alleges also that "[t]here is a similarly named legal entity 'NCO Portfolio Management, Inc.' registered with the Ohio Secretary of State." Plaintiff claims that, in dropping the "Inc." from the case caption, "NCO concocted and used the similarity in names between 'NCO Portfolio Management' and its controlled entity 'NCO Portfolio Management, Inc.' to support and accomplish such fraudulent concealment, and to prevent consumers from undertaking efforts to discover the non-existence of 'NCO Portfolio Management.'" Plaintiff further alleges that Defendants acted in concert to file lawsuits on defaulted consumer debts, and that such lawsuits: were beyond the statute of limitations; were filed with insufficient documentation; were filed despite lack of investigation; were accompanied by false documentation; improperly requested interest and costs; and misrepresented credit information.

Specifically, the Amended Complaint contains 13 counts.

- **Counts 1, 7 and 12** assert claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. ("FDCPA").

- **Counts 2, 8 and 13** allege claims under the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 et seq. ("OCSPA").

- **Counts 4 and 10** assert class and individual civil conspiracy claims for the NCO Defendants and JBR working in concert with one another allegedly to violate federal and state law.

- **Count 5** asserts class abuse of process claims.

- **Count 6** asserts class defamation claims.

- **Count 9** alleges an individual claim for fraud.

- **Count 11** is an individual claim for malicious prosecution.

- **Count 3,** which asserted class claims under the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.01 et seq. ("ODTPA"), has been dismissed with prejudice by the Court (ECF # 91).

All claims under the FDCPA, OCSPA, and common law derive from either: (a) the name "NCO Portfolio Management" appearing in the caption of the Bedford complaint; (b) the timeliness of the suit; (c) the attachment to the Bedford complaint; (d) the prayer for relief in the Bedford complaint; or (e) the use of the Courts to collect bad debts. For the reasons discussed below, none of these claims has merit.

## II. *LEGAL STANDARD*

■ Decisions granting judgment on the pleadings pursuant to Rule 12(c) are reviewed under the same standard applied to motions to dismiss under Rule 12(b)(6). *See Kottmyer v. Maas,* 436 F.3d 684, 689 (6th Cir.2006). The Court construes the

---

1. The background procedural facts are set forth in the Court's memorandum opinion dated July 19, 2010 (ECF # 31), 723 F.Supp.2d 1020 (N.D.Ohio 2010).

complaint in a light most favorable to the plaintiff, accepts all factual allegations as true, and determines whether the complaint states a plausible claim for relief. *Albrecht v. Treon,* 617 F.3d 890, 893 (6th Cir.2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)).

The Sixth Circuit has applied the now familiar pleading requirements in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Iqbal* to both Rule 12(b)(6) and Rule 12(c) motions, and held that plaintiffs must " 'plead ... factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Albrecht,* 617 F.3d at 893 (quoting *Iqbal,* 129 S.Ct. at 1949); *see New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1049–51 (6th Cir.2011). Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient. *Iqbal,* 129 S.Ct. at 1949–50; *see Courie v. Alcoa Wheel & Forged Prods.,* 577 F.3d 625, 629 (6th Cir.2009). Additionally, when considering a Rule 12(b)(6) or 12(c) motion, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Kottmyer,* 436 F.3d at 689.

The plausibility pleading standard set forth in *Twombly* and *Iqbal* requires a plaintiff to have pled enough facts to state a claim for relief that is plausible on its face. *Iqbal,* 129 S.Ct. at 1950. A complaint that allows the court to infer only a "mere possibility of misconduct" is insufficient to "show" that the complainant is entitled to relief and fails to meet the pleading requirements of Rule 8. *Id.* In sum, the allegations in the complaint must raise a right to relief above the speculative level. *Dudek v. Thomas & Thomas Attor-*

*neys & Counselors at Law, LLC,* 702 F.Supp.2d 826, 832 (N.D.Ohio 2010).

## III. DISCUSSION

### A. Counts 1 Through 10

■ Rather than directly address the substance of the motions for judgment on the pleadings as to Counts 1 through 10, Plaintiff argues that a prior ruling in the state court precludes the present motions under the "rule of the case" doctrine. Plaintiff is mistaken. The state court previously considered and denied motions to dismiss filed by Defendants, but did so under state law. The state court did not address Mr. Hrivnak's complaint under the Federal Rules, which apply after removal and govern the motions for judgment on the pleadings currently under consideration. *Herron v. Jupiter Transp. Co.,* 858 F.2d 332, 335–36 (6th Cir.1988). Moreover, the state court did not consider the issues raised here, but rather denied the prior motions to dismiss on other grounds. Thus, the law of the case doctrine does not apply.

Given that the law of the case doctrine does not apply here, Plaintiff has offered no viable opposition to the motions for judgment on the pleadings with respect to Counts 1 through 10. The Court is not obligated to salvage Plaintiff's complaint by formulating legal arguments on his behalf. Thus, Counts 1 through 10 remain substantively unopposed, and are dismissed. Counts 1 through 10, and the remainder of Plaintiff's claims, also fail for the reasons explained below.

### B. Counts 1, 7 And 12—FDCPA Claims

■ To plead a claim under the FDCPA, a plaintiff must show that: "(1) plaintiff is "consumer" as defined by the Act; (2) the "debt" arises out of transac-

tions which are "primarily for personal, family or household purposes;" (3) defendant is a "debt collector" as defined by the Act; and (4) defendant must have violated § 1692e's [or other applicable] prohibitions [of the FDCPA]." *Wallace v. Washington Mut. Bank., F.A.*, 683 F.3d 323, 326 (6th Cir.2012).

### 1. Counts 1, 7 And 12—Plaintiff Fails To Allege A Consumer Debt

■ As an initial matter, Plaintiff's Counts 1, 7 and 12 are legally insufficient because Plaintiff neglects to allege anywhere in his complaint that the debt at issue is a consumer debt, as is required to prevail under the FDCPA. Plaintiff does not identify the debt which he allegedly was obligated to pay. Absent allegations of collection activity regarding a consumer debt, the complaint fails as a matter of law. *See, e.g., Estep v. Manley Deas Kochalski, LLC,* 942 F.Supp.2d 758, 767–68 (S.D.Ohio 2013) (allegation that the plaintiff is a consumer is insufficient to state a claim under the FDCPA).

### 2. Count 1(a)—Plaintiff's Claim That The Bedford Lawsuit Was Time–Barred Is Insufficiently Pled

■ Plaintiff alleges that Defendants commenced and maintained time-barred, invalid, legally incompetent lawsuits against him and others in violation of §§ 1692d, 1692e and 1692f, but does not supply any facts in support of his legal conclusions. Indeed, it is impossible to deduce from the allegations in the complaint when the cause of action accrued, where the original debt was incurred, what statute of limitations should apply, and when the applicable statute of limitations would expire. This is not the "sufficient

factual matter" required under *Iqbal* and *Twombly* that, if accepted as true, states a claim to relief that is plausible on its face. Thus, dismissal is appropriate. *Clark v. Unifund CCR Partners,* No. 07cv0266, 2007 WL 1258113, *4 (W.D.Pa. Apr. 30, 2007) (allegation that state court suit to recover a credit card debt was filed beyond the applicable statute of limitations, without any indication of applicable dates, "is a vague legal conclusion and is legally insufficient under the FDCPA....").

### 3. Count 1(b)—Plaintiff Fails To Allege Express Or Implied Representations That Were Misleading

■ Plaintiff asserts in Count 1(b) that Defendants violated §§ 1692e and 1692f by making false, misleading and/or unfounded representations in lawsuits as to agreements under which the consumer was allegedly bound. To ultimately prevail on this claim, Plaintiff must show that the lawsuit contained a material misrepresentation that would mislead or deceive the least sophisticated consumer. *See Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 596 (6th Cir.2009). Plaintiff fails to allege that the complaint filed against him in state court contains any express or implied representation that could be construed as materially false, deceptive or misleading.[2]

Mr. Hrivnak's Brief in Opposition incorrectly alleges that Defendants should be liable under the FDCPA for making the "false statements" that supporting documents regarding Mr. Hrivnak's debt exist. Essentially, Mr. Hrivnak is argues that original supporting materials should have been attached to the state court complaint. This simply is not the case. Mr. Hrivnak fails to point to any law in Ohio that

---

**2.** Plaintiff appears to claim that the documents attached to the complaint do not evidence a claim for $11,481.84. This fact, even

if true, does not make the prayer for relief false. Plaintiff fails to identify the false component of the prayer for relief.

supports this requirement. Further, Mr. Hrivnak's argument flies in the face of Ohio Rule of Civil Procedure 10(D), which does not require original documents to be attached to a complaint—it simply requires the plaintiff to attach copies of documents to support a claim on an account or other written instrument, or to explain why such documents are not attached. The collection complaint did just that[3].

### 4. Counts 1(c) And 12(d)—Defendants Did Not Make An Improper Demand For Costs And Interest

Plaintiff alleges that by demanding interest at the statutory rate from the date of judgment and court costs in the collection complaint, Defendants violated the FDCPA. However, the collection complaint only contained a prayer for relief, not a demand for payment, which stated:

> WHEREFORE, the Plaintiff prays for a Judgment against the Defendant(s) in the amount of $11,481.84, with statutory interest from the date of judgment, costs of this action, and such other and further relief as the Court deems just and proper under the circumstances.

■ A prayer for court costs or interest in a state court complaint cannot be characterized as a false representation or unfair practice. There are at least two reasons why.

First, a prayer for relief is required by the Ohio Rules of Civil Procedure. *Lee v. Javitch, Block & Rathbone*, 601 F.3d 654 (6th Cir.2010); Ohio Civ. R. 7(A); 8(A)(2),(E); 10(B); 54(D); 84 and Official Form 2. The use of language required by Ohio law and procedural rules cannot be deemed to be deceptive, misleading, or unfair, so long as it is not false. *Lee v.*

*Javitch, Block & Rathbone LLP*, 601 F.3d at 657, n. 2. There can be no argument that the prayer for relief was "false," because costs and interests are expressly allowed by Ohio law. *Barney v. LVNV Funding LLC*, 1:11 CV2590, 2012 WL 2995471 (N.D.Ohio July 23, 2012). Under Ohio law, a prevailing party is entitled to an award of costs under Ohio Civ. R. 54(D) and an award of statutory interest as provided by R.C. § 1343.03(A).

■ Second, a prayer for relief does not constitute a representation that the defendant must pay the amount listed, nor that the creditor is entitled to these additional amounts. The prayer for relief is not a demand to the debtor himself. Rather, the prayer for relief is what it purports to be—a prayer or request directed to the court. The FDCPA does not extend protection to communications to courts. *See, e.g. O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 940–41, 944 (7th Cir. 2011) ("the Fair Debt Collection Practices Act does not extend to communications that would confuse or mislead a state court judge"). Counts 1(c) and 12(d) must therefore be dismissed.

### 5. Counts 1(d) And 12(e)—Plaintiff Fails To Allege Any Facts To Support That False Credit Information Was Reported

■ In Counts 1(d) and 12(e), Plaintiff alleges that Defendants violated § 1692e(8) by reporting or causing to report inaccurate credit information regarding the "illegally filed lawsuits" which was known or should have been known to be false. Assuming "illegally filed lawsuits"

---

**3.** The state court complaint stated, "The account records are not attached hereto because, upon information and belief: (a) Plaintiff is not the original creditor and does not have possession, custody or control of said records; (b) copies were sent monthly to Defendant(s), and are or were in Defendant(s)' possession, custody or control; and/or (c) said account records may be voluminous."

relates to lawsuits allegedly filed out of statute, the Court has found that Plaintiff's statute of limitations claims are inadequately pled, and must be dismissed. Moreover, there are no facts alleged to show that Defendants furnished credit information on the subject account, or that it was ever disputed. Plaintiff also fails to allege that a credit bureau reported the underlying collection action as undisputed after a dispute was made. Accordingly, Counts 1(d) and 12(e) fail as a matter of law.

### 6. Count 1(e)—Plaintiff's Claim For "Inadequate Investigations" Fails

In Count 1(e), Plaintiff complains that Defendants violated 15 U.S.C. §§ 1692e, 1692f and 1692d when employing a pattern and practice of filing invalid lawsuits, with inadequate investigation of the debt before filing the lawsuit, with the use of false documents and false representations, and with the improper motive of cheating unsuspecting or unsophisticated consumers.

Plaintiff's claim fails as a matter of law because the FDCPA does not impose a duty of investigation on debt collectors. *Richeson v. Javitch, Block & Rathbone, LLP*, 576 F.Supp.2d 861, 868 (N.D.Ohio 2008). Likewise, the FDCPA does not provide a federal remedy for unsuccessful collection suits commenced with insufficient documentation. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330–31 (6th Cir.2006) (the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, oppressing a debtor). Any attempt to collect a defaulted debt will be unwanted by a debtor, but employing the court system cannot be said to be an abu-

sive tactic under the FDCPA. *Id.* (filing a lawsuit is not covered by § 1692d).

Regarding the claim that Defendants have used false documents and made false representations, the complaint contains no facts upon which the Court or Defendants might assess what documents and representations were false. For these reasons, Count 1(e) is dismissed.

### 7. Count 12(a)-(c)—Defendants Did Not Improperly Use A Fictitious Name

Count 12(a)-(c) relates to the allegation that NCO Portfolio Management (rather than NCO Portfolio Management, Inc.) was the named plaintiff in the suit against Mr. Hrivnak, and that name was not registered as a fictitious name with the Ohio Secretary of State. Plaintiff alleges that Defendants used a deceptive name to initiate the suit, purportedly in violation of FDCPA §§ 1692d, 1692e and 1692f, and did so intentionally so as to deceive alleged debtors regarding what entity was attempting to collect the debt.

Plaintiff's claims under Count 12(a)-(c) are insupportable, for several reasons. First, NCO Portfolio Management is not a fictitious name as defined by R.C. § 1329.01. In relevant part, that section defines a fictitious name as one that "does not include the name of record" of any "foreign corporation that is registered pursuant to Chapter 1703. of the Revised Code." Plaintiff concedes that NCO Portfolio Management, Inc. was, at all times material, registered as a foreign corporation with the Ohio Secretary of State. Thus, the captioned name "NCO Portfolio Management" includes the identifying moniker of the registered entity, "NCO Portfolio Management, Inc.," and is not a fictitious name.[4]

**4.** To support his claim that the state court

plaintiff should have sued under a different

 Second, contrary to Plaintiff's allegations, the mere fact that the caption of the Bedford complaint drops, either intentionally or not, the "Inc." from "NCO Portfolio Management, Inc." is not abusive, harassing, deceptive, misleading or unfair as a matter of law. The Sixth Circuit has repeatedly held that communications from a debt collector, including pleadings from lawyers, are evaluated objectively under the least sophisticated consumer standard. Under that standard, a pleading can violate the FDCPA if it "is open to more than one reasonable interpretation, at least one of which is inaccurate." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433 (6th Cir.2008). The Sixth Circuit has stated that federal courts should "not 'countenance lawsuits based on frivolous misinterpretations or nonsensical interpretations of being led astray.'" *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592–96 (6th Cir.2009). The FDCPA's focus is not on whether the name used by the creditor is permitted by law, but on whether the name used may result in the least sophisticate consumer's deception in terms of what entity is trying to collect his debt. *Gutierrez v. AT & T Broadband, LLC*, 382 F.3d 725, 740 (7th Cir.2004). Here, there was no risk of confusion, deception or misleading anyone, because NCO Portfolio Management has all of the identifying attributes of its corporate name, NCO Portfolio Management, Inc. The least sophisticated consumer would not be misled by the absence of "Inc." from the caption of the state court complaint.[5]

 Moreover, even if Plaintiff's claims in Count 12(a)-(c) fail for no other reason, they fail because the fictitious name registration statute—R.C. § 1329.10(B)—does not apply to the use of Ohio courts to collect debts.[6] Rather, it requires registration when an entity is "doing business" in Ohio. R.C. § 1329.10(B). Ohio courts have held that filing a lawsuit to collect a debt does not constitute "transacting business" or "doing business" under Ohio law. *Bosl v. First*

name, Plaintiff here cites to *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323 (6th Cir.2012). *Wallace* has no bearing on the facts of this case. In *Wallace*, despite the fact that Washington Mutual Bank did not own the mortgage or the note at issue, in a foreclosure complaint the bank "asserted that it was the holder of the note" and "that the mortgage had been assigned to it and that it was the holder of the mortgage." *Id.* at 325. In fact, the transfer of the mortgage and note from the original lender, Wells Fargo, to Washington Mutual was not recorded until 34 days after Washington Mutual filed the foreclosure action. *Id.* at 325. Here, Mr. Hrivnak's issue is with the manner in which NCO Portfolio Management Inc. is identified in the Bedford complaint, and not with whether NCO owns the debt. The main point of contention is that NCO should have sued under a different name. This very different from *Wallace*, where Washington Mutual did not actually own the mortgage to the home on which it initiated a foreclosure proceeding.

5. Moreover, the least sophisticated consumer would not research the presence or absence of state registrations to find out if the entity he is dealing with has properly registered its name, and cannot pursue an FDCPA claim premised on the manufactured findings of such an investigation. *Stricklin v. First Nat. Collection Bureau, Inc.*, No. 3:10–CV–01027, 2012 WL 1076679, *7 (S.D.Ill. Mar. 30, 2012).

6. R.C. § 1329.10(B) provides, "No person *doing business* under a trade name or fictitious name shall commence or maintain an action in the trade name or fictitious name in any court in this state or on account of any contracts made or transactions had in the trade name or fictitious name until it has first complied with section 1329.01 of the Revised Code and, if the person is a partnership, it has complied with section 1777.02 of the Revised Code, but upon compliance, such an action may be commenced or maintained on any contracts and transactions entered into prior to compliance." (Emphasis supplied.)

*Fin. Invest. Fund I,* 2011 WL 1547511, *3–4, 2011–Ohio–1938, ¶ 18–23 (8th Dist. Apr. 21, 2011); *Premier Capital, LLC v. Baker,* 972 N.E.2d 1125, 1131, 2012–Ohio–2834, ¶ 24–29 (11th Dist.). Because acquiring debt and suing is the only activity the NCO Defendants are alleged to have engaged in Ohio, and these activities do not constitute doing business under Ohio law, the registration requirement under R.C. § 1329.10(B) does not apply.[7]

### 8. Count 7—Plaintiff's Claim That Defendants Misrepresented The Amount And Character Of The Debt Is Insufficiently Pled

 Plaintiff's Count 7 fails to state a claim upon which relief may be granted. In Count 7, Plaintiff alleges that "Defendants falsely represented the amount and character of the alleged debt by falsely stating, in the Original Complaint, that Mr. Hrivnak owned "11,481.84 'on the contract' " in violation of § 1692e(2)(A).

To begin, credit card agreements are written contracts, formed through the issuance and use of the card. *Bank One, Columbus N.A. v. Palmer,* 63 Ohio App.3d 491, 493, 579 N.E.2d 284 (10th Dist.1989). Therefore, contrary to Plaintiff's assertion, the statement as to the existence of a "contract" cannot be considered false.

Moreover, whether or not the "contract" was attached to the complaint, and whether or not the Defendants had possession of the "contract" at the time the suit was filed, does not constitute a violation of the FDCPA. *See Washington v. Roosen, Varchetti & Oliver, PPLC,* 894 F.Supp.2d 1015, 1024 (W.D.Mich.2012).

To the extent that Plaintiff alleges that the amount of the debt is incorrect, Plain-

tiff pleads no facts to support this conclusion. Therefore, the claim is insufficiently pled. *Craig v. Vision Financial Corp.,* 1:12CV697, 2012 WL 5395170 (S.D.Ohio Nov. 5, 2012).

### C. Counts 2, 8 And 13—OCSPA Claims

#### 1. Plaintiff Fails To Plead Facts Independent Of Dismissed FDCPA Claims

As shown above, Plaintiff has failed to state a claim under the FDCPA. Plaintiff's OCSPA claims in Counts 2, 8 and 13 depend upon the same facts (or lack thereof) pled to support Plaintiff's FDCPA claims. Because Plaintiff has failed to support his OCSPA claims with additional facts, these claims fail as a matter of law. *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 403 (6th Cir.1998).

#### 2. Plaintiff Fails To Allege Elements Necessary For A Violation Of The OCSPA

 To maintain an action under the OCSPA, Plaintiff must establish that he is a "consumer" who engaged in a "consumer transaction" with a "supplier", as is required by R.C. § 1345.09. *Culbreath v. Golding Ents., L.L.C.,* 114 Ohio St.3d 357, 872 N.E.2d 284 (2007). Plaintiff's Counts 2, 8 and 13 fail as a matter of law because, at the very least, Defendants are not "suppliers" under the statute.

As recently noted by the Supreme Court of Ohio, "suppliers" under the OCSPA are those that cause a consumer transaction to happen or that seek to enter into a consumer transaction. *Anderson v. Barclay's Capital Real Estate, Inc.,* 136 Ohio St.3d

---

**7.** In his opposition, Plaintiff contends that "NCO Portfolio Management" was not the "real party in interest" in the Bedford lawsuit because NCO Capital II, LLC was the owner of the assigned credit card account. Plaintiff's complaint fails to set forth any facts to support this assertion.

31, 37–38, 989 N.E.2d 997 (2013). " 'Supplier' means a seller, lessor, assignor, franchiser, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." *Id.* (citing R.C. 1345.01(C)). For a consumer transaction to happen, there must be a "sale, lease, assignment, award by chance, or other transfer [sell or give] of a service to a consumer." *Id.* Lawsuits filed by lawyers and debt collection efforts do not cause a consumer transaction to happen. *Id.*

 Further, Plaintiff's OCSPA claims fails because Plaintiff has failed to state a claim based on any unfair, deceptive or unconscionable practices by Defendants in connection with any "consumer transaction." The Court has found that the NCO Defendants did not improperly use a fictitious name to attempt to collect the subject debt. Moreover, Ohio courts have expressly found that the failure to register a fictitious name with the secretary of state as required by R.C. § 1329.10 is not an unfair or deceptive act for which a party can obtain relief under the OCSPA. *Crull v. Maple Park Body Shop,* 36 Ohio App.3d 153, 156, 521 N.E.2d 1099 (12th Dist.1987). This Court likewise has held that there was no deception regarding any statement that the credit card agreement constituted a "contract", or regarding supporting documentation for the state court complaint. As previously discussed, there are no facts alleged to support that Defendants filed this suit or any other beyond the applicable statute of limitations. Nor was there any deception by Defendants in requesting damages and interest in prayer for relief, as the Court has explained above. Lastly, the filing of the state court lawsuit, even without the immediate ability to prove the existence, amount or true owner of the debt, is not a deceptive practice as a matter of law. *See Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 333 (6th Cir.2006).

### 3. Plaintiff Lacks Standing To Seek Injunctive Relief

 Plaintiff's Counts 2, 8, and 13 fail for the additional reason that Plaintiff lacks standing to seek injunctive relief.[8] The lawsuit against Plaintiff was dismissed. Injunctive relief is prospective relief. It does not apply to Plaintiff, as he is not the object of ongoing or threatened future collection activities. *See Ellis v. Dyson,* 421 U.S. 426, 434, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975) (only by alleging a continuous injury can a plaintiff establish an injury in fact necessary to seek prospective relief). Further, Plaintiff does not have standing to seek injunctive relief on behalf of absent non-parties to this action, under the guise of a putative class. *Gooch v. Life Investors Ins. Co.,* 589 F.3d 319, 332 (6th Cir.2009).[9]

### D. Counts 4, 6 And 10—Common Law Claims For Civil Conspiracy And Defamation

Plaintiff's common law claims for civil conspiracy (Counts 4 and 10) and defamation (Count 6) must be dismissed for several reasons. Chief among them is that Plaintiff's vague and conclusory claims do not satisfy the pleading standard under Federal Rule of Civil Procedure 8.

 In addition, a claim for civil conspiracy cannot survive without an underlying unlawful act. *Gosden v. Louis,*

---

8. It appears that, on appeal, Plaintiff represented that he was seeking injunctive relief alone under the OSCPA.

9. Plaintiff fails to provide any opposition to Defendants' claim that Plaintiff lacks standing to seek injunctive relief.

116 Ohio App.3d 195, 219, 687 N.E.2d 481 (9th Dist.1996). The alleged unlawful act on which Plaintiff's civil conspiracy claims rest is Defendants' alleged filing of a lawsuit without properly registering a fictitious name. This Court has determined that there was no registration violation. Accordingly, Plaintiff's civil conspiracy claims lack a predicate unlawful act, and fails as a matter of law.

Further, Plaintiff's allegations are devoid of any reference to factual events in support of a defamation claim, including that there was an unprivileged publication to a third party that amounted at least to negligence on the part of the publisher. *Vaughn v. Lake Metropolitan Hous. Auth.*, 2010 WL 3081473, *6 (11th Dist. Aug. 6, 2010) (explaining the essential elements of a defamation claim). Indeed, the statements on the basis of which Plaintiff claims defamation were made in the course of a judicial proceeding, and, as such, are absolutely privileged under Ohio law. *Doe v. Mount Vernon City School District Board of Educ.*, No. 2:08CV575, 2010 WL 1433301, *6 (S.D.Ohio Apr. 6, 2010).

### E. *Count 5—Common Law Abuse Of Process Claim*

To succeed on an abuse of process claim, a plaintiff must establish that: (1) a legal proceeding has been set in motion in proper form with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298, 626 N.E.2d 115 (1994). "Abuse of process occurs where someone attempts to achieve

through use of the court that which the court is itself powerless to order." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 271, 662 N.E.2d 9 (1996).

Here, the complaint alleges the lawsuit was time-barred, without any accompanying facts. The Court has held that this allegation is inadequately pled as a matter of law.

Further, the complaint lacks any allegations that Defendants sought to achieve something that the court was powerless to order. The only alleged "ulterior purpose" could be that Defendants sought to collect money; however, the court had the power to assess an award. *Havens–Tobias v. Eagle*, 2003–Ohio–1561 ¶ 24, 2003 WL 1601461, *5 (2d Dist. Mar. 28, 2003). Plaintiff's abuse of process claim is without basis.

### F. *Count 9—Common Law Fraud Claim*

Plaintiff fails to plead his allegations of fraud with sufficient particularity to meet the requirements under Federal Rule of Civil Procedure 9(b).[10] To satisfy the rule, the plaintiff must "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (internal quotations omitted). Further, when there are multiple defendants, a fraud claim must identify who made the alleged misrepresentations. *Hoover v. Langston Equipment Assoc., Inc.*, 958 F.2d 742, 745 (6th Cir.1992).

---

**10.** Plaintiff offers no response to Defendants' argument that Plaintiff failed to plead fraud with particularity.

 Plaintiff fails to satisfy these elements. He fails to allege: who made the misrepresentations; the content of the purported misrepresentations; that he relied upon the supposed misrepresentations; the fraudulent scheme and intent of the defendants; or the injury resulting. In fact, Plaintiff answered and denied the claims against him, and therefore could not have relied upon any of the alleged misrepresentations made by Defendants to his detriment.

### G. *Count 11—Malicious Civil Prosecution Claim*

 Plaintiff cannot establish essential elements of a malicious prosecution claim. First, Plaintiff fails to show termination of the prior action in his favor. *Crawford v. Euclid Natl. Bank*, 19 Ohio St.3d 135, 139, 483 N.E.2d 1168 (1985). The prior case was dismissed without prejudice, which is insufficient as a matter of law to support a malicious prosecution claim. *See Elite Designer Homes, Inc. v. Landmark Partners*, 2006 WL 2270832, *9, 2006–Ohio–4079 (9th Dist. Aug. 9, 2006). Second, Plaintiff cannot show a prejudgment seizure of property, as is required to support a malicious prosecution claim. *Robb*, 75 Ohio St.3d at 270, 662 N.E.2d 9. Neither damage to a person's credit, nor incurrence of defense costs constitutes seizure of property. *Id.; Aames Capital Corp. v. Wells*, 2002 WL 500320, *6, 2002–Ohio–1498 (9th Dist. Apr. 3, 2002). Plaintiff's malicious prosecution claim fails as a matter of law.

### IV. *CONCLUSION*

For all of the foregoing reasons, Plaintiff's complaint fails to state a plausible claim for relief. Defendants' motions for judgment on the pleadings are granted.

**IT IS SO ORDERED.**

### OPINION AND ORDER

Following the Court's January 28, 2014 dismissal of his Complaint for failure to state a claim, Plaintiff Christopher Hrivnak concedes that his Complaint was not properly pled. Now, nearly four years after this action was removed to this Court, Plaintiff argues that he has not had a "reasonable opportunity" to plead his case. He moves the Court to alter or amend the dismissal and permit him leave to file an amended complaint. For the reasons that follow, Plaintiff's Motion is DENIED.

 Plaintiff brings the present Motion to Alter or Amend Judgment under Rule 59(e) of the Federal Rules of Civil Procedure. Under Rule 59, a court may alter or amend judgment based on: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change of controlling law; or (4) a need to prevent manifest injustice. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir.2010). A court may deny a Rule 59 motion for "undue delay." *Leisure Caviar*, 616 F.3d at 615. A Rule 59 motion is not an opportunity to re-argue a case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998). Indeed, a motion made under Rule 59(e) is "extraordinary" and is seldom granted because it runs afoul of the notions of finality and repose. *Bishawi v. Northeast Ohio Correctional Ctr.*, No. 4:12CV3106, 2014 WL 495501, *1 (N.D.Ohio Feb. 5, 2014).

 As an initial matter, Plaintiff's request to amend the Complaint at this juncture is denied because Plaintiff has unduly delayed making this request. Since 2010, Plaintiff has had an abundance of opportunities to request leave to amend his Complaint. These include:

1. in April of 2010, after the case was removed;
2. anytime after April of 2010, when a motion for judgment on the pleadings was filed, which was later stayed pending appeal;
3. during the September 23, 2013 status conference at which Defendants specifically requested and were granted leave to file motions for judgment on the pleadings (ECF # 74);
4. after Defendants filed their motions for judgment on the pleadings (ECF # s 76, 80);
5. during the December 4, 2013 status conference; and
6. in Plaintiff's motion for leave to amend his Complaint to dismiss his Ohio Deceptive Trade Practices Act claim.

Instead of seeking to amend the Complaint at any of these opportunities since 2010, Plaintiff opposed Defendants' motions for judgment on the pleadings, never requested leave to include the proposed amendments, and waited until after judgment was granted to make this request. Indeed, not only did Plaintiff fail to seek amendment at an earlier date, he vigorously asserted in response to Defendants' motions for judgment on the pleadings that his Complaint was adequately pled. Now Plaintiff completely reverses his position, admits that his complaint was inadequately pled, and asks leave of this Court to amend. It is simply too late. Having had four years to make this request and instead choosing to stand by his deficient Complaint, Plaintiff's request to amend must be denied due to his undue delay.

Moreover, Plaintiff fails to demonstrate that this Court committed an error of law in failing to apply the "law of the case" doctrine and dismissing his Complaint. As this Court previously held, and as Defendants have argued on numerous occasions, the law of the case doctrine relied upon by Plaintiff is inapplicable because: (a) the state court did not address the sufficiency of the Complaint under the federal rules as interpreted by *Iqbal, Twombly* and their progeny; (b) the law of the case doctrine does not foreclose issues not previously addressed; and (c) the sufficiency of the pleading filed March 15, 2010 in state court, and removed to this Court, was never challenged in state court prior to removal.

Further, Plaintiff has not provided new evidence that would warrant permission to amend the Complaint. Rather, Plaintiff's failure to move to amend his Complaint amounts to a "delay resulting from a failure to incorporate previously [ ] available evidence ...," which the Sixth Circuit has held warrants denial of a motion to amend. *Leisure Caviar*, 616 F.3d at 615. On March 15, 2010, Plaintiff had obtained all of the discovery that has ever been conducted in this case. Notwithstanding this, on March 15, 2010, Plaintiff filed a Complaint which failed to state a claim, and which he did not seek to amend to state a claim until judgment was rendered against him.

Plaintiff argues that leave to amend must be granted post-judgment due to "the change[ ][in] procedural rules and pleading standards" which occurred when the case was removed from federal court. However, what Plaintiff fails to mention is that he was well aware that this case would be removed to federal court when he filed the March 15, 2010 Complaint, and that federal law would apply to these proceedings. In the Cuyahoga Court of Common Pleas, defendant Javitch, Block & Rathbone, LLC filed a Motion to Realign Parties, requesting the court to designate Mr. Hrivnak as the Plaintiff and to require

him to file a complaint to "afford the Defendants the right to remove this action to federal court. . . ." Plaintiff was well aware of this, noting in his opposition brief that "JBR justifies its request principally by asserting that it . . . should be allowed to utilize the Federal procedural rules." The court subsequently granted JBR's motion, and gave Plaintiff 30 days from February 11, 2010 to file a complaint. Plaintiff filed his Complaint on March 15, 2010. Plaintiff cannot now feign surprise that Defendants removed the Complaint, and that this Court would apply federal law.

Finally, there is no danger that "manifest injustice" will occur if Plaintiff is denied the opportunity to amend. First, as discussed, Plaintiff had an abundance of opportunities to amend before judgment was entered, but chose the alternate path of standing by his deficient Complaint. Second, Plaintiff has failed to provide any cogent identification of "critical facts" unavailable to Plaintiff prior to dismissal. Third, in claiming manifest injustice, Plaintiff misrepresents and confuses the caption of the state court complaint and Plaintiff's own prior arguments. Further, a side by side comparison of the proposed amended complaint with the dismissed Complaint shows that Plaintiff is seeking to: (a) relitigate issues already decided, and (b) pursue a new theory of liability for the alleged failure to adhere to the requirements of R.C. § 1319.12, which is not premised on newly-acquired evidence, and was not previously advanced. A Rule 59(e) motion cannot be used to advance new theories, claims or arguments for the first time, or to reargue issues already advanced and rejected. *Engler*, 146 F.3d at 374. Thus, Plaintiff's Motion is denied as failing provide any basis for a finding of manifest injustice.

Even without considering whether Plaintiff's proposed amendment would be futile, the foregoing considerations compel the denial of Plaintiff's Motion. For all of these reasons. Plaintiff's Motion to Alter or Amend Judgment Filed on January 28, 2014 (ECF # 97) is DENIED.

**IT IS SO ORDERED.**